**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

RACHEL BRANNON, et al.,

Plaintiffs,

v.

FEDERAL EXPRESS CORPORATION, successor by merger to FEDEX GROUND PACKAGE SYSTEM, INC.,

Defendant.

Case No. 2:24-cv-01128-RJC

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION TO FEDERAL EXPRESS CORPORATION'S MOTION FOR RULE 11 SANCTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

I. Introduction ..... 1

II. Background ..... 3

A. Plaintiffs Voluntarily Decertify a Collective Action Including More Than 30,000 Opt-ins ..... 3

B. LLR Files This Action on Behalf of Former *Claiborne* Opt-ins ..... 4

C. LLR Voluntarily Dismisses 8 Plaintiffs From This Action in Response to Concerns Raised in FedEx's Rule 11 Briefing ..... 5

III. Legal Standard ..... 7

IV. Argument ..... 8

A. LLR Has Not Violated Rule 11(b)(1) ..... 8

1. FedEx's motion is speculative and otherwise inappropriately relies on privileged communications between LLR and its clients ..... 8

2. LLR's pre-suit inquiry was reasonable under the circumstances ..... 10

3. *In re Engle Cases* is clearly distinguishable ..... 13

B. LLR Has Not Violated Rule 11(b)(2)-(3) ..... 17

1. LLR has cured any defects outlined in FedEx's motion ..... 17

2. LLR adequately pleaded the Amended Complaint, and at any rate that is irrelevant ..... 18

3. LLR was under no obligation to seek pay documents from Plaintiffs' ISPs prior to filing the Complaint, and it is in fact FedEx that has failed to meet its discovery obligations in *Claiborne* ..... 18

C. Dismissing the Amended Complaint Would Serve No Purpose and Would Jeopardize the Rights of Thousands of Drivers ..... 20

V. Conclusion ..... 20

**TABLE OF AUTHORITIES**

**Cases**

*Abner, et al. v. Federal Express Corporation*,
No. 2:24-cv-01129-RJC (W.D. Pa) .......... 5

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946) .......... 19

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*,
618 F.3d 277 (3d Cir. 2010) .......... 7, 8

*Atwood and Granado v. Federal Express Corporation*,
No. 2:24-cv-01127-RJC (W.D. Pa.) .......... 5

*Claiborne v. FedEx Ground Package System, Inc.*,
No. 2:18-cv-01698 (W.D. Pa.), .......... 1, 4

*Costello v. Daddario*,
710 F. Supp. 1035 (E.D. Pa. 1989) .......... 11

*CTC Imports and Exports v. Nigerian Petroleum Corp.*,
951 F.2d 573 (3d Cir. 1991) .......... 12

*Doering v. Union County Bd. of Chosen Freeloaders*,
857 F.2d 191 (3d Cir. 1988) .......... 7

*Ford Motor Co. v. Summit Motor Prod., Inc.*,
930 F.2d 277 (3d Cir.1991) .......... 7

*Gaiardo v. Ethyl Corp.*,
835 F.2d 479 (3d Cir. 1987) .......... 12, 20

*Hamer v. Career College Ass'n*,
979 F.2d 758 (9th Cir. 1992) .......... 12

*In re Engle Cases*,
283 F. Supp. 3d 1174 (M.D. Fla. 2017) .......... 14, 15

*In re Mad Toyz, III, LLC*,
2022 WL 3449543 (11th Cir. Aug. 17, 2022) .......... 17

*In re Welding Fume Prods. Liab. Litig.*,
MDL No. 1535, 2006 WL 2505891 (N.D. Ohio Aug. 28, 2006) .......... 3

*In re: Schaefer Salt Recovery, Inc.*,
542 F.3d 90 (3d Cir. 2008) .......... 17

*Kamelgard v. Macura*,
2009 WL 10708103 (N.D. Ill. May 4, 2009) ........................................................... 17

*LabMD, Inc. v. Tiversa Holding Corp.*,
2016 WL 3002433 (W.D. Pa. May 23, 2016) .................................................. 7, 8, 13, 17

*Martin v. Brown*,
151 F.R.D. 580, (W.D. Pa. 1993) ................................................................... 8, 18

*Mary Ann Pensiero, Inc. v. Lingle*,
847 F.2d 90 (3d Cir.1988) ........................................................................... 8, 11

*Rhoades v. Powell*,
644 F. Supp. 645 (E.D. Cal. 1986) ..................................................................... 17

*Rodick v. City of Schenectady*,
1 F.3d 1341 (2d Cir. 1993) ............................................................................... 12

*Roy v. FedEx Ground Package Systems, Inc.*,
No. 3:17-cv-30116-KAR (D. Mass) ................................................................. 1, 4

*Simmerman v. Corino*,
27 F.3d 58 (3d Cir. 1994) ................................................................................. 18

*Soo San Choi v. D'Appolonia*,
252 F.R.D. 266 (W.D. Pa. 2008) ......................................................................... 7

*Teamsters Local Union No. 430 v. Cement Express, Inc.*,
841 F.2d 66 (3d Cir. 1988) ........................................................................... 10, 12

*TEGG Corp. v. Beckstrom Elec. Co.*,
2008 WL 5216169 (W.D. Pa. Dec. 10, 2008) ................................................ 7, 10, 11

*Wolfington v. Reconstructive Orthopaedic Associates II PC*,
935 F.3d 187 (3d Cir. 2019) ............................................................................... 11

**<u>Statutes</u>**

29 U.S.C. § 216 .................................................................................................... 1

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") ...................................... 4

**<u>Other Authorities</u>**

Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*,
82 TUL. L. REV. 2323 (2008) ............................................................................... 3

**Rules**

Fed. R. Civ. P. 11 .......... 10, 11

Fed. R. Evid. 408 .......... 10

Pa. R. Prof. Cond. 4.4 .......... 9

## I. INTRODUCTION

The plaintiffs in this case are current and former FedEx delivery drivers who had previously opted into *Claiborne v. FedEx Ground Package System, Inc.*, No. 2:18-cv-01698 (W.D. Pa.), pursuant to 29 U.S.C. § 216(b). As in *Claiborne*, Plaintiffs allege that FedEx owes them overtime as their joint employer.

Before filing this mass action, Plaintiffs' counsel noted that the result of decertifying the collective would be that opt-in plaintiffs would then sue FedEx *en masse* to protect their claims from the statute of limitations.[1] Perhaps betting that only a small fraction of opt-in plaintiffs would refile their claims, FedEx pressed for decertification—thereby inviting this litigation. Following the court's order decertifying the collective in *Roy v. FedEx Ground Package Systems, Inc.*, No. 3:17-cv-30116-KAR (D. Mass), ECF No. 408, Plaintiffs decided not to spend more time fighting the certification issue in *Claiborne* but instead to try to move the litigation toward resolution – particularly trial – by agreeing to voluntarily decertify the collective, knowing that individual drivers could continue to proceed with their claims by becoming party plaintiffs, rather than simply opt-in plaintiffs in a collective.[2]

[1] In the hearing on FedEx's motion to decertify the collective in *Roy*, Plaintiffs' counsel stated: "if the Court decertifies this action, we'll need to file 450 individual cases[.]" (*Roy v. FedEx Ground Package Systems, Inc.*, No. 3:17-cv-30116-KAR (D. Mass), ECF No. 401 at 72.) Plaintiffs' counsel made that clear to FedEx that the same would occur if *Claiborne* were decertified.

[2] Plaintiffs believed that the common issue of FedEx being the drivers' joint employer should have been sufficient to maintain certification of the collective. However, Judge Robertson disagreed with that argument in *Roy*, deciding that the differences in whether individual drivers were actually owed overtime undermined the FLSA certification standard and required decertification. (*See Roy v. FedEx Ground Package Systems, Inc.*, No. 3:17-cv-30116-KAR (D. Mass.), ECF No. 408 (recognizing similarity of joint employment issue but noting differences among drivers' entitlement to overtime pay).) Thus, rather than fighting this battle

Desperate to avoid lying in the bed it made, FedEx now seeks to dismiss this entire case under Rule 11. To justify this extraordinary request, FedEx claims the Amended Complaint includes plaintiffs with legally invalid claims. However, following FedEx's Rule 11 letter to Plaintiffs, Plaintiffs investigated and determined which drivers they agreed no longer facially had valid claims. Those drivers whom Plaintiffs' counsel agreed no longer had valid claims were dismissed.

As set forth further below, prior to filing this case, Plaintiffs' counsel made every effort (working under tight deadlines) to prepare this and several related complaints that accurately listed the opt-in plaintiffs from *Claiborne* who chose to continue with their claims under the FLSA.[3] Of the 385 plaintiffs named in the Amended Complaint, FedEx identified three plaintiffs whom it contends do not have viable claims. Plaintiffs carefully evaluated these identifications and amended the complaint to remove plaintiffs whom they agreed facially did not have viable claims and also investigated whether others should be removed for the same reasons, and those drivers were indeed removed from the Amended Complaint.[4] However, Plaintiffs kept any drivers who have a viable claim in the Amended Complaint.

---

again before this Court, Plaintiffs agreed to move on voluntarily to the next stage of the litigation, with a decertified collective and resulting individual claims filed through mass actions.

[3] Plaintiffs had until August 6, 2024, to refile their claims without losing tolling under the statute of limitations. Courts have recognized that mistakes made as a result of deadlines on filing or time constraints are excusable, especially when dealing with a large volume of litigants and/or relying on the sworn declaration of a client. *See infra* §§ IV(A)(2)-(3). The issue is whether counsel makes a good faith attempt to correct those mistakes, as Plaintiffs' counsel has indisputably done here. *See infra* § IV(B)(1).

[4] This process was also done under tight deadlines. Notably, FedEx emphatically rejected Plaintiffs' reasonable request for an extension of time to complete this process, insisting instead that the deadline remain right in the midst of the year-end holidays. (*See* Email chain dated November 19, 2024, attached hereto as Exhibit B.)

For the remaining plaintiffs for whom FedEx did not identify a facial deficiency with their claim, FedEx speculates that some may refuse to participate in discovery. Pointing to two attorney-client communications it found online, FedEx accuses Plaintiffs' counsel of failing to adequately inform their clients of their future discovery obligations in this case (whatever those might be).[5] Yet, by FedEx's own admission, it lacks "insight into other communications LLR may have had with its clients." (*See* FedEx's Mem. ISO Rule 11 Sanctions, ECF No. 26, at 11 n.6). At any rate, no precedent suggests that Rule 11 allows for an entire case to be dismissed at the pleadings stage based on the suspicion that some plaintiffs might later fail to engage in discovery.

This Court should decline FedEx's invitation to misuse Rule 11 as a pretext for removing a large case from its docket. Any concerns the Court may have regarding the number of plaintiffs in this case can and should be addressed through case management procedures—not through the drastic measure of dismissal.

## II. Background

### A. Plaintiffs Voluntarily Decertify a Collective Action Including More Than 30,000 Opt-ins

On December 21, 2018, Plaintiffs' counsel (Lichten & Liss-Riordan, P.C. and co-counsel, collectively "LLR") initiated a nationwide collective action against FedEx in the matter

[5] As Plaintiffs have noted, they believe the proper way for the Court to manage this litigation would be to come up with a system of test case, or bellwether, trials, as is routine in mass torts. *See, generally* Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323 (2008). It should not be necessary for discovery to be taken regarding every single plaintiff and then have the court begin scheduling trial or trials. *See, e.g.*, *In re Welding Fume Prods. Liab. Litig.*, MDL No. 1535, 2006 WL 2505891, at *2 (N.D. Ohio Aug. 28, 2006) (selecting fifteen out of 100 cases for case-specific discovery). Thus, as a practical matter, it may or may not be necessary for every one of the 377 plaintiffs in this case to undergo individual discovery.

of *Claiborne v. FedEx Ground Package System, Inc.*, No 2:18-cv-01698 (W.D. Pa.), alleging that FedEx, as a joint employer with various Independent Service Providers ("ISPs"), failed to pay delivery drivers overtime to which they were entitled under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and various state laws. *Claiborne* was conditionally certified on September 30, 2019 (*id.*, ECF No. 107), nearly 30,000 drivers opted in, and the parties proceeded to engage in extensive discovery over the next four-and-a-half years.

Concurrent with that matter, LLR represented a collective of approximately 434 opt-ins pursuing identical claims against FedEx in Massachusetts in the matter of *Roy v. FedEx Ground Package System, Inc.*, No. 3:17-cv-30116-KAR (D. Mass.), which was also conditionally certified on November 27, 2018. (*See id.*, ECF No. 64.) Following years of discovery and motion practice, the *Roy* court decertified the collective on March 29, 2024. (*See id.*, ECF No. 408.)

Recognizing the similarities between *Claiborne* and *Roy*, and wanting to avoid additional time and expense and delays for the parties and the court, the *Claiborne* plaintiffs moved to voluntarily decertify their collective on April 30, 2024, requesting that the court dismiss all opt-ins without prejudice and toll the statute of limitations for those opt-ins to pursue their claims individually through August 6, 2024. (*See Claiborne*, No 2:18-cv-01698, ECF No. 523.) The court granted the Claiborne plaintiffs' motion on May 2, 2024. (S*ee id.*, ECF No. 526.)

**B. LLR Files This Action on Behalf of Former Claiborne Opt-ins**

Following the voluntary decertification of the *Claiborne* action, LLR determined which of their approximately 30,000 clients from that case desired to continue pursuing their claims. LLR reached out to their clients through various communications including some of the privileged communications that FedEx attaches to its motion.

Plaintiffs filed this case, along with the related cases of *Abner, et al. v. Federal Express Corporation*, No. 2:24-cv-01129-RJC (W.D. Pa), and *Atwood and Granado v. Federal Express Corporation*, No. 2:24-cv-01127-RJC (W.D. Pa.), each consisting of a different group of former *Claiborne* opt-ins, on August 6, 2024.[6] (ECF No. 1.) Plaintiffs' initial Complaint in this matter named 400 individual plaintiffs. Plaintiffs subsequently filed an Amended Complaint on September 24, 2024, dismissing 15 individual plaintiffs who Plaintiffs recognized had been mistakenly included in the initial Complaint. (ECF No. 18.)

### C. LLR Voluntarily Dismisses 8 Plaintiffs From This Action in Response to Concerns Raised in FedEx's Rule 11 Briefing

On November 7, 2024, FedEx served its Rule 11 motion on plaintiffs, informing LLR that it believed this entire case should be dismissed (due to a relatively small number of plaintiffs who it contended were inappropriately included in the complaint) and, further, that it would not consider "any offer by LLR to dismiss from *Brannon* the specific examples FedEx discusses therein as a resolution to its motion." (*See* Email dated November 7, 2024, attached hereto as Exhibit A). In response to the concerns raised in FedEx's Rule 11 briefing, LLR offered to work with FedEx to identify and dismiss any drivers who were inadvertently or improperly included. (*See* Email chain dated November 19, 2024, attached hereto as Exhibit B.) FedEx refused to work with Plaintiffs on this issue and insisted that the entire Complaint must simply be dismissed. (*See id.*)

[6] *Brannon* consists primarily of former *Claiborne* opt-ins who have already participated in discovery to some degree. *Abner* consists primarily of former *Claiborne* opt-ins (and some new plaintiffs) who did not participate in discovery. *Atwood* named two individuals who participated in discovery and who Plaintiffs' counsel believe would be appropriate plaintiffs ready to proceed in a bellwether trial.

LLR thus on its own reviewed each plaintiff named in the Amended Complaint in an effort to address the concerns highlighted in FedEx's Rule 11 letter. As a result of those efforts, Plaintiffs voluntarily dismissed 8 named plaintiffs in this action on November 29, 2024. (ECF No. 24.) Of these, one was a driver whom FedEx had identified by name as no longer having valid claims (Nadine Clement), and seven were additional drivers who Plaintiffs' counsel recognized no longer had valid claims for similar reasons.[7] These dismissed plaintiffs included one individual whose claims were previously dismissed with prejudice (Nadine Clement) and seven individuals whose claims are outside the statute of limitations.

On December 2, 2024, Plaintiffs' counsel reached out to FedEx's counsel informing them that they had reviewed the plaintiffs named in the Amended Complaint, identified a number of plaintiffs who had been erroneously included, and dismissed them. (See Email Chain dated December 2, 2024, attached hereto as Exhibit C.) LLR again asked FedEx to identify any additional plaintiffs whose claims FedEx contended were improperly included in the Amended Complaint so that they too could be reviewed, but FedEx refused. (*See id.*) FedEx then proceeded to file its Motion for Sanctions to Dismiss Plaintiffs' First Amended Complaint. (ECF No. 23.)

---

[7] In its motion, FedEx identifies three drivers by name as having invalid claims, but it is mistaken about two of these drivers. FedEx claims that Esther Walton and Catherine Dahlstrom are "new plaintiffs" who were not opt-ins in *Claiborne* and whose claims are time barred. (*See* FedEx's Mem. ISO Rule 11 Sanctions, ECF No. 24, at 20.) But these individuals were, in fact, opt-ins in *Claiborne*, and their claims were therefore tolled. (*See* Opt-In Consent Forms, attached hereto as Exhibit D.) (Ms. Walton formerly went by Esther Paige and has changed her name since opting in to *Claiborne.*) Consequently, Plaintiffs have not moved to dismiss them.

FedEx also states that one of two Carolyn Williams named in the Amended Complaint is a new plaintiff, but that is also incorrect. Like Esther Walton (née Paige), one of those two individuals formerly went by Carolyn Howell. (*See* Opt-In Consent Forms, attached hereto as Exhibit D.)

## III. LEGAL STANDARD

Rule 11 "provides that a court may sanction an attorney or party for filing documents for an improper purpose, making frivolous arguments or making allegations that lack evidentiary support." *LabMD, Inc. v. Tiversa Holding Corp.*, 2016 WL 3002433, at *3 (W.D. Pa. May 23, 2016). In the Third Circuit, "the legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." *Soo San Choi v. D'Appolonia*, 252 F.R.D. 266, 271 (W.D. Pa. 2008) (quoting *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir.1991)). In turn, "'reasonableness' in the context of Rule 11 has been defined as 'an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact.'" *Id.* (quoting *Ford Motor Co.*, 930 F.2d at 289); *see also TEGG Corp. v. Beckstrom Elec. Co.*, 2008 WL 5216169, at *2 (W.D. Pa. Dec. 10, 2008) ("[T]he Court 'is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring into what was reasonable to believe at the time the pleading, motion, or other paper was submitted."). In assessing the reasonableness of the submission, "[t]he Court is required to consider all of the circumstances surrounding the submission, including the amount of time the signer had to investigate and whether the signing attorney had to rely on a client for information as to the facts." *TEGG Corp.*, 2018 WL 5216169 at *2.

The Third Circuit has also "cautioned that Rule 11 sanctions are warranted only in the exceptional circumstances ... where a claim or motion is patently unmeritorious or frivolous." *LabMD,* 2016 WL 3002433 at *3 (citing *Doering v. Union County Bd. of Chosen Freeloaders*, 857 F.2d 191, 194 (3d Cir. 1988)). *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 297 (3d Cir. 2010). "It must not be used as an automatic penalty against an attorney or party advocating the losing side of a dispute, and it should not be

applied to adventuresome, though responsible, lawyering which advocates creative legal theories." *Ario*, 618 F.3d at 297 (internal quotation marks and citation omitted).

Federal courts in Pennsylvania have likewise "held that Rule 11 sanctions should be imposed only if it is patently clear that a claim 'has absolutely no chance of success.'" *LabMD,* 2016 WL 3002433 at *3 (collecting cases). "The proper focus is on whether the complaint or other paper constitutes 'abusive litigation or misuse of the court's process,' and, in that light, Rule 11 sanctions are inappropriate simply 'because an attorney, after time for discovery, is unable to produce adequate evidence to withstand a motion for summary judgment [or a motion to dismiss].'" *Martin v. Brown*, 151 F.R.D. 580, 585–86 (W.D. Pa. 1993) (quoting *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir.1988)).

## IV. ARGUMENT

### A. LLR Has Not Violated Rule 11(b)(1)

#### 1. *FedEx's motion is speculative and otherwise inappropriately relies on privileged communications between LLR and its clients*

In arguing that LLR has violated Rule 11(b)(1), FedEx relies primarily on rife speculation regarding LLR's privileged communications with its clients, as well as its legal strategy in pursuing claims on behalf of former opt-ins in the decertified *Claiborne* action. This argument is inappropriate for multiple reasons.

First, FedEx asks the Court to impose Rule 11(b)(1) sanctions based on speculation that LLR "does not appear [to have] communicated to its clients the significant differences between being an opt-in versus a named Plaintiff." (*See* FedEx's Mem. ISO Rule 11 Sanctions, ECF No. 26, at 11.) In support of that contention, FedEx points to two attorney-client privileged communications that it purportedly found after "conducting internet searches … to try to determine what LLR said to former opt-ins about refiling their claims." (*See* Exhibit A to

FedEx's Mem. ISO Rule 11 Sanctions ¶¶ 29-31, ECF No. 26-1.) FedEx's reliance on those communications is problematic for multiple reasons. First, they were clearly privileged communications and, as such, FedEx was required to notify Plaintiffs' counsel that it had obtained privileged communications, which it failed to do. *See* Pa. R. Prof. Cond. 4.4. Second, as privileged communications, they are inadmissible and cannot be considered for Rule 11 purposes. Third, it is not for FedEx to dictate what Plaintiffs' counsel must tell their clients, nor does FedEx have any grounds to believe that the two communications it refers to in its brief reflect the full scope of Plaintiffs' counsel's diligence or communications with their clients. That FedEx has zeroed in on these two communications, one of which is a blank form that LLR asked clients to fill out in order to determine whether they might qualify to pursue their claims individually (s*ee* Exhibit K to FedEx's Mem. ISO Rule 11 Sanctions, ECF No. 26-11), and from there has concluded that LLR has failed to meet its Rule 11(b)(1) obligation to ensure that the plaintiffs in this action are "valid" (whatever that means) is speculative, to say the least. Indeed, FedEx cannot possibly presume to know what Plaintiffs' counsel said to their clients outside of those two communications, or what counsel did to vet their clients' claims, because such information is privileged. Presumably because it realizes that these two communications cannot possibly reflect the extent of LLR's communications with its clients and investigation into their claims, FedEx invites LLR to disclose additional attorney-client privileged communications to prove that plaintiffs were "properly informed of, and accepted, their duties and obligations[.]" (*See* FedEx's Mem. ISO Rule 11 Sanctions at 11 n.6, ECF No. 26.) But as the Western District of Pennsylvania has recognized, "Rule 11 does not require a party of an attorney to disclose any privileged communications or work product to show that a pleading, motion, or other paper is

substantially justified." *TEGG Corp.*, 2008 WL 5216169 at *3 (citing Fed. R. Civ. P. 11, Notes of the Advisory Committee on Rules, 1983 Amendment).

Otherwise, FedEx relies on speculation regarding LLR's legal strategy, concluding that LLR is continuing to pursue Plaintiffs' claims only to "harass FedEx into settlement." (*See* FedEx's Mem. ISO Rule 11 Sanctions at 12-15 & n.8, ECF No. 26.) But again, LLR does not need to divulge attorney-client privileged communications or work product to demonstrate that that is plainly untrue. LLR had an obligation to continue pursuing the *Claiborne* opt-ins' claims against FedEx following decertification of that case, so long as the firm has a good faith basis to believe these drivers have viable (i.e. non-frivolous) claims and to attempt to resolve them in such a way that maximizes the relief provided to Plaintiffs while minimizing the burden placed on the parties and the Court. As such, LLR reached out to FedEx's counsel prior to filing this action in an effort to initiate settlement communications (something that FedEx improperly raises in its motion, *see* Fed. R. Evid. 408). When settlement was not forthcoming, LLR proceeded to file this case by the expiration of the tolling deadline, as was its duty in order to avoid prejudicing its clients' claims. That there were "many thousands" of opt-ins in *Claiborne* who are now plaintiffs in this and related cases does not change that duty, nor does it indicate that LLR has improperly inflated the number of individuals joined in this case or otherwise engaged in abusive litigation in an effort to harass FedEx into settlement. *See, e.g.*, *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir. 1988) (Rule 11 sanctions are appropriate "only if the filing of the complaint constituted abusive litigation or misuse of the court's process").

**2. *LLR's pre-suit inquiry was reasonable under the circumstances***

A cursory review of the factors that courts consider in determining whether Rule 11 sanctions for failure to make a reasonable pre-suit inquiry are appropriate (which FedEx does not

even mention in its motion) demonstrates that this is not an exceptional circumstance justifying sanctions. "The Advisory Committee Notes to Rule 11 set forth four factors to consider when gauging the reasonableness of an attorney's pre-filing inquiry: (1) the amount of time available to the signer for conducting the factual and legal investigation; (2) the necessity of reliance on a client for the underlying factual information; (3) the plausibility of the legal position advocated; and (4) whether the case was referred to the signer by another member of the Bar." *TEGG*, 2008 WL 5216169 at *3 (citing Fed. R. Civ. P. 11, Notes of the Advisory Committee on Rules, 1983 Amendment); *see also Pensiero*, 847 F.2d at 95. Courts in the Third Circuit often add a fifth factor: (v) "the complexity of the legal and factual issues involved." *Pensiero*, 847 F.2d at 95; *Wolfington v. Reconstructive Orthopaedic Associates II PC*, 935 F.3d 187, 207 (3d Cir. 2019).

The majority of these factors weighs in favor of denying FedEx's motion for Rule 11 sanctions. First, LLR had only 120 days to investigate the claims of some 30,000 individuals who were former opt-ins to the *Claiborne* litigation and thus (for the most part) had not engaged in substantial discovery. Some degree of error was inevitable[8] in light of those time pressures and the volume of claims but is clearly excusable given that the alternative was to irreparably harm Plaintiffs' rights by failing to file the claims of those drivers who chose to continue to pursue their rights before the expiration of the 120-day tolling period. *See, e.g.*, *Costello v. Daddario*, 710 F. Supp. 1035, 1037–38 (E.D. Pa. 1989) (declining to sanction an attorney who included as defendants several persons who should not have been named in light of "the pressures of filing a timely complaint" and the need to "preserve all possible claims within the

---

[8] Notably, FedEx identified three drivers out of 385 named as plaintiffs in the Amended Complaint for having facial deficiencies with their claims. After further investigation, Plaintiffs' counsel found just 8 drivers in total with such deficiencies, and they were promptly dismissed (prior to FedEx filing its motion for sanctions).

statute of limitations"); *see also Rodick v. City of Schenectady*, 1 F.3d 1341, 1351 (2d Cir. 1993) (imposition of Rule 11 sanctions against defendants' counsel was abuse of discretion where "mistakes were the product of haste").

Second, these time constraints and the limited availability of documentary evidence made it necessary for LLR to rely on their clients' representations regarding whether they were qualified to participate in this lawsuit. *See, e.g.*, *CTC Imports and Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 579 (3d Cir. 1991) ("The shorter the time the more reasonable it is for an attorney to rely on the client[.]"); *Roddick*, 1 F.3d at 1351 ("Where an attorney is forced to plead under exigent circumstances, her reliance on the affidavits of her clients should be sufficient to constitute reasonable investigation for purposes of Rule 11.") (citing *Hamer v. Career College Ass'n*, 979 F.2d 758, 759 (9th Cir. 1992) (Rule 11 sanctions not justified where "the attorney was relying upon the declaration of her client" and "the exigencies of a temporary restraining order require[d] immediate action by counsel")).

Third, there is no question that Plaintiffs' legal position—that FedEx is their joint employer and has violated the FLSA by failing to pay them overtime wages to which they were entitled— is plausible. Were it not, the parties would not have spent more than five years litigating these issues in *Claiborne*. FedEx has of course taken the position that it cannot conceivably be considered Plaintiffs' joint employer under the governing standard, but a party's position on the legal merits of the cause of action is not grounds for Rule 11 sanctions. *See, e.g.*, *Teamsters Local Union No. 430*, 841 F.2d at 69–70 (complaint based on novel and ultimately unsuccessful legal theory aimed at extending doctrine of successor liability did not trigger Rule 11 sanctions); *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987) ("[J]ust as mere failure

to prevail does not trigger a sanction award, neither does advocating new or novel legal theories.”).

Fourth, the complexity of the factual issues involved also weighs in Plaintiffs’ favor. As FedEx itself has claimed, conducting an independent investigation into whether each of the 30,000 former *Claiborne* opt-ins have a valid claim for overtime wages would require sifting through, for each individual, pages of scanner data and pay stubs to determine whether: (1) they drove for an ISP within the statute of limitations period; (2) they drove, at any point, a vehicle with a Gross Vehicle Weight Rating of less than 10,001 pounds; (3) they worked more than 40 hours in any given week; and (4) they were not, in fact, paid overtime for those qualifying weeks. That is plainly impossible to do within 120 days, even for those individuals for whom FedEx has produced scanner data. Thus, in light of the circumstances (including the deadline for preserving Plaintiffs’ claims), LLR’s reliance on their clients’ representations and past experience litigating substantially identical claims in *Claiborne* in filing the Complaint in this action was reasonable. It is during discovery and the litigation process that further investigation occurs in a case; counsel are not required to have fully litigated a case internally in order to have a good faith basis to assert a claim for Rule 11 purposes.

In short, this is not an “exceptional circumstance[] … where a claim or motion is patently unmeritorious or frivolous” or otherwise “has absolutely no chance of success” such that the extraordinary measure of imposing Rule 11 sanctions is justified. *LabMD*, 2016 WL 3002433 at *3.

**3. *In re Engle Cases is clearly distinguishable***

In arguing that this *is* such an exceptional circumstance warranting Rule 11 sanctions, FedEx repeatedly analogizes to an out-of-Circuit tobacco litigation decision, in which a judicial panel of the United States District Court for the Middle District of Florida imposed sanctions on

the plaintiffs' counsel pursuant to Rule 11, 28 U.S.C. § 1927, and the court's inherent authority following a *decade* of misconduct and obstruction that triggered an investigation by a court-appointed special master. *See generally In re Engle Cases*, 283 F. Supp. 3d 1174 (M.D. Fla. 2017). That case is clearly distinguishable on both its facts and procedural posture. Most notably, the 3,700 complaints (encompassing the claims of 4,432 individual plaintiffs) that were the subject of *In re Engle Cases* were filed following decertification of a *class* action, rather than a *collective* action. This is a material difference. Individuals who wish to participate in a FLSA collective action are required to affirmatively opt in to the action by filing a declaration and consent form attesting that, to the best of their knowledge, they qualify to participate in the collective action under the legal theory being pursued. To that effect, the former *Claiborne* opt-ins all submitted court-approved opt-in consent forms, declaring under penalty of perjury that they delivered packages for FedEx within the statute of limitations, and that they were not paid for overtime to which they were entitled during that time period. In filing the individual claims in this action, LLR reasonably and in good faith relied on those client representations.[9]

There is no similar requirement in the context of a federal or state class action like *In re Engle Cases*. Rather, an individual is considered an absent class member as long as he or she meets the class definition and has not affirmatively opted *out* of the class. In *In re Engle Cases*, that class was defined as "[a]ll Florida citizens and residents and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." 283 F.Supp.3d at 1185 (internal quotation marks omitted). The 3,700 individual claims that were ultimately filed in *In re Engle Cases* appear to

---

[9] To the extent the Amended Complaint still includes any "new plaintiffs" who were not opt-ins in *Claiborne*, those plaintiffs similarly declared that they qualified to bring overtime claims against FedEx.

have been drawn from a pool of 6,000 individuals who contacted class counsel at some point in the decade prior to filing to inquire generally "about suing cigarette manufacturers." *Id.* at 1186 ("[B]etween 1995 and 2008, Wilner collected names, but he did not make formal or special inquiry into the status of the Potential Plaintiffs.") (internal quotation marks omitted). In sanctioning plaintiffs' counsel, the issue that troubled the court was not that counsel had failed to thoroughly investigate each individual claim before filing within the tolling period, but that they had failed to even *make contact* with most of those individuals and therefore did not even have authorization to sue on their behalf. *See id.* at 1187 and n.9 ("Ultimately when asked whether he had signed authorizations to initiate a lawsuit for each of the plaintiffs, Wilner admitted: 'Probably not.'").[10] As it turned out, approximately one-third of the individuals named in the *In re Engles Cases* complaints had been improperly named; many plaintiffs were never class members in the first place (e.g., because they had never smoked or lived in Florida) and more than 500 of them had long been deceased. *See id.* at 1187.

That situation is clearly distinguishable from this case, as FedEx apparently acknowledges (*see* FedEx's Mem. ISO Rule 11 Sanctions, ECF No. 24, at 22 n.14), where LLR received authorizations to file these claims from each of the Plaintiffs named in the Complaint,

---

[10] FedEx states that plaintiffs' counsel in *In re Engle Cases* "relied on previous opt-in forms from the collective as the basis for filing the complaints [when it couldn't get in touch with the potential plaintiffs]", but that is not reflected in the decision (nor would it make sense for there to have been any "previous opt-in forms" from the class action). (*See* FedEx's Mem. ISO Rule 11 Sanctions, ECF No. 26, at 17.) The section of the decision that FedEx presumably cites to states that "when the Court pressed Wilner at the December 13, 2016 hearing about whether he had authorization to file the complaints, he repeatedly referred to agreements authorizing him to make a claim on the Engle Trust Fund, which is not an authorization to initiate litigation." *In re Engle Cases*, 283 F.Supp.3d at 1187 (cleaned up). An authorization to make a claim on a trust fund is not the same as an opt-in form, and regardless, as discussed herein, LLR did not derive its authorization to file the claims in this lawsuit from the opt-in forms filed in *Claiborne*. It sought and received authorization from each individual to be named in this new litigation.

and those Plaintiffs affirmatively declared to LLR that they believe they have valid FLSA claims against FedEx. As Plaintiffs have explained above, some degree of error was inevitable in communicating with and sorting through the claims of a large subset of approximately 30,000 clients in 120 days, but the fact that a very small minority of those originally named in the Complaint (23 out of 400) slipped through the cracks does not warrant sanctions (especially where LLR has subsequently made a good faith effort to address any errors). Indeed, the *In re Engles Cases* court explicitly acknowledged that honest mistakes or misunderstandings on the part of counsel when filing and pursuing claims on behalf of a large volume of plaintiffs do not give rise to Rule 11 sanctions. *See id.* at 1221 n.40 ("Of course, when dealing with a volume of litigants there may be occasional mistakes or misunderstandings which would not warrant sanctions. That is not what we write about here.")

At any rate, the filing of the complaints was hardly the focus of the *In re Engles Cases* sanctions order. Rather, throughout, the court emphasized counsel's "obstructive, deceptive, and recalcitrant behavior" in response to the Court's case management efforts long after filing "hundreds of frivolous complaints." *See id.* at 1184. Of note, plaintiffs' counsel refused to dismiss or even investigate the deficient claims long after it became (or should have become) obvious that they were not viable and resisted attempts by the Court and opposing counsel to address those deficiencies. *See, e.g.*, *id.* at 1215 ("Not once during those four years did Counsel do anything to advise the Court or opposing counsel about the fatally defective complaints."). By contrast, LLR immediately took active steps to cure any defects in the Amended Complaint within the 21-day safe harbor deadline following FedEx's service of the Rule 11 motion, and offered several times to work with FedEx to identify and dismiss any remaining Plaintiffs that FedEx contends facially do not have a valid overtime claim. Thus, LLR's conduct is a far cry

from that which the court found sanctionable in *In re Engle Cases* and should not give rise to sanctions in this case.

**B. LLR Has Not Violated Rule 11(b)(2)-(3)**

**1. *LLR has cured any defects outlined in FedEx's motion***

FedEx spends several pages of its motion outlining the ways in which LLR's conduct is sanctionable because a small proportion of individuals who do not have valid claims were inadvertently included in the Amended Complaint. However, as explained above, *see supra* § II(C), LLR addressed these within the 21-day safe harbor period following FedEx's service of its Rule 11 motion on LLR. Plaintiffs' cure of the defects in their Amended Complaint effectively renders moot FedEx's request for sanctions here. *See, e.g.*, *Rhoades v. Powell*, 644 F. Supp. 645, (E.D. Cal. 1986) ("The court denies defendants' request for sanctions … [because t]he defects in the RICO claim might be cured by amendment[.]") (internal citations omitted); *In re Mad Toyz, III, LLC*, 2022 WL 3449543, at *2 n.1 (11th Cir. Aug. 17, 2022) (amendment of complaint in response to issues raised by opposing party "cured any potential Rule 11 violation in the original complaint"). Indeed, that is the very purpose of Rule 11's safe harbor provision. *See LabMD*, 2016 WL 3002433 at *4 (The "purpose of safe harbor is to give the parties the opportunity to correct their errors.") (citing *In re: Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008)); *see also Kamelgard v. Macura*, 2009 WL 10708103, at *3 (N.D. Ill. May 4, 2009) (purpose of 21-day safe harbor provision is to "allow[] parties to cure deficiencies in the pleading without the threat of court-imposed sanctions.") (internal citations omitted). Thus, the Court should deny FedEx's motion for 11(b)(2) and (3) sanctions because Plaintiffs have already corrected the errors that FedEx identified.[11]

[11] To the extent FedEx identifies any additional plaintiffs that it believes facially do not have valid claims (as FedEx did throughout the five-year *Claiborne* litigation), Plaintiffs'

### 2. ***LLR adequately pleaded the Amended Complaint, and at any rate that is irrelevant***

FedEx also suggests that the Court should impose Rule 11 sanctions because Plaintiffs have failed to adequately plead their claims in the Amended Complaint. Plaintiffs obviously disagree, but that is besides the point here. It is axiomatic that Rule 11 sanctions are not appropriate simply because the Complaint fails to state a claim upon which relief may be granted or otherwise does not allege sufficient facts to withstand a motion to dismiss. *See Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994) ("[T]he mere failure of a complaint to withstand a motion for summary judgment or a motion to dismiss should not be thought to establish a [Rule 11] violation."); *Brown*, 151 F.R.D. at 585–86 (same). Thus, the adequacy of the facts alleged in the Amended Complaint is not a proper ground upon which to impose or deny Rule 11 sanctions.

### 3. ***LLR was under no obligation to seek pay documents from Plaintiffs' ISPs prior to filing the Complaint, and it is in fact FedEx that has failed to meet its discovery obligations in Claiborne***

Finally, FedEx suggests that sanctions are warranted because LLR did not seek and review pay documents from Plaintiffs' supposed employers (the intermediary "ISPs" with whom FedEx contracted) prior to filing the Complaint. That is, of course, an issue for discovery, which this case has not yet entered, rather than pre-suit inquiry. And rightly so: it would be impossible for *any* firm to request and review the pay documents of approximately 30,000 individuals across hundreds of different ISPs in 120 days, as FedEx appears to suggest was necessary here.

Nor is LLR's decision not to seek pay documents from the *Claiborne* plaintiffs' and former opt-ins' ISPs indicative of a failure to investigate its clients' claims. FedEx knows exactly why LLR has not sought such documents from ISPs, because the parties have briefed this

---

counsel will continue working cooperatively to determine if they agree or if instead they believe there are good faith disputes regarding those plaintiffs' claims.

issue countless times in *Claiborne* and *Roy*. In those cases, as here, Plaintiffs allege that *FedEx* is their employer and, as the employer, *FedEx* has custody and control of Plaintiffs' pay records – and it was FedEx's legal responsibility to maintain such records.[12]

In addition, as the *Claiborne* plaintiffs have repeatedly explained, FedEx has the legal right to access its drivers' pay records under the "Independent Service Provider Agreement" that it requires every ISP to sign in order to operate under its banner. That right of access is written plain as day into the ISP agreement: "ISP agrees to … assume sole responsibility for payroll deductions and maintenance of payroll and employment records and for compliance with Applicable Law [defined as including all federal and state statutes] … and, at the request of FXG, provide evidence of such compliance." (*See* Sample ISP Agreement ¶ 6.2(C), attached here as Exhibit E.) As such, the *Claiborne* plaintiffs sought those documents from *FedEx*.

FedEx, however, has buried its head in the sand, arguing that it is not the plaintiffs' employer and thus does not possess their pay records, and that the ISP Agreement somehow does not require, or even empower, it to seek those records despite the fact that it is defending a lawsuit alleging that it, as a joint employer with the ISPs, *did not comply with federal wage and hour law* by failing to pay drivers overtime wages to which they were statutorily entitled.

Regardless, those arguments are properly reserved for discovery, as well as merits determinations, and are not proper bases upon which to rule on the appropriateness of Rule 11 sanctions. FedEx's attempt to put this issue in front of the Court at this stage is plainly improper.

---

12 Federal law recognizes that, in the absence of pay records in a wage dispute, inferences are to be drawn in favor of employees, not in favor of employers who had a duty to maintain the pay records. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946).

### C. Dismissing the Amended Complaint Would Serve No Purpose and Would Jeopardize the Rights of Thousands of Drivers

In the event that the Court determines that LLR has violated Rule 11—and LLR has not, as discussed above—a wholesale dismissal of this case is not an appropriate sanction under the circumstances. Dismissal (whether with or without prejudice) is considered a particularly harsh sanction, and courts within the Third Circuit generally decline to dismiss pleadings as a sanction for attorney conduct in all but the most exceptional circumstances. That is because dismissal of a case jeopardizes the plaintiff's claim. *See Gaiardo*, 835 F.2d at 482 ("Although dismissal of a case is an additional alternative [to financial penalties, a warning, or reprimand], judges are reluctant to jeopardize a client's case because of the lawyer's indiscretion.").

If the Court were to dismiss this case because a small percentage of the named Plaintiffs in the Amended Complaint did not have viable claim but were nonetheless inadvertently included (defects that have since been cured), or based on FedEx's rife speculation regarding LLR's privileged communications with clients and legal strategy, it would jeopardize the claims of the remaining Plaintiffs (who have always made up the majority of Plaintiffs in this case) who *do* have valid overtime claims. This is not an exceptional circumstance warranting such a harsh sanction.

## V. CONCLUSION

For the reasons discussed herein, the Court should deny FedEx's motion for Rule 11 sanctions to dismiss Plaintiffs' First Amended Complaint.

Dated: January 10, 2024

Respectfully submitted

RACHEL BRANNON, et al.,

By their attorneys,

*s/ Shannon Liss-Riordan*
Shannon Liss-Riordan (*pro hac vice*)
Harold Lichten (*pro hac vice*)
Sarah Schalman-Bergen (PA Bar No. 206211)
Matthew Carrieri (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com
hlichten@llrlaw.com
ssb@llrlaw.com
mcarrieri@llrlaw.com

Jeremy Abay (PA 316730) (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
76 E. Euclid Avenue, Suite 101
Haddonfield, NJ 08035
(856) 509-5346
jabay@llrlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 10, 2024.

*s/ Shannon Liss-Riordan*