# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALBERTO DE JESUS BAEZ SR., Plaintiff, v. FEDEX GROUND PACKAGE SYSTEM, INC., successor by merger to FEDEX CORPORATION, Defendant. | C.A. No. 1:26-cv-10626-ADB |

BEFORE THE HONORABLE ALLISON D. BURROUGHS
UNITED STATES DISTRICT JUDGE

VIDEOCONFERENCE

April 9, 2026

John J. Moakley United States Courthouse
Courtroom No. 17
One Courthouse Way
Boston, Massachusetts 02210

Kelly Mortellite, RPR, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts 02210
mortellite@gmail.com

APPEARANCES:

Counsel on behalf of Plaintiff:
Shannon E. Liss-Riordan
Bradley Manewith
Lichten & Liss-Riordan, P.C.
729 Boylston Street
Suite 2000
Boston, MA 02116
617-994-5800
sliss@llrlaw.com

Counsel on behalf of Defendant:
Jessica G. Scott
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80292
303-244-1846
scott@wtotrial.com

Michael A. Siedband
FedEx Express Litigation Department
3620 Hacks Cross Road
Building B, 3rd Floor
Memphis, TN 38125-8800
901-434-3228
michael.siedband@fedex.com

Joseph P. McHugh
James Angelo
John Charles Snyder
Federal Express Corporation
1000 FedEx Drive
Moon Township, PA 15108
412-834-2083
joseph.mchugh@fedex.com

P R O C E E D I N G S

(Case called to order.)

COURTROOM CLERK: Will counsel identify themselves for the record.

MS. LISS-RIORDAN: Good morning. Shannon Liss-Riordan for the plaintiffs.

MR. SIEDBAND: Good morning, Your Honor. Mike Siedband from FedEx for defendants, and with me we have counsel who will also introduce themselves.

11:49 MS. LISS-RIORDAN: Wait. We didn't finish for the plaintiff side. Bradley Manewith is also with me for plaintiffs.

MS. SCOTT: Good morning, Your Honor. Jessica Scott for FedEx along with James Angelo, Joseph McHugh, John Snider and Mr. Siedband.

THE COURT: All right. So I think that we are still, we have one pending pro hac motion, which we will get entered assuming it's in order. I think as you all know, all of the cases have been -- we're sort of treating this like a mini MDL, 11:50 so all of the cases will be handled by me for pretrial, and we'll take it from there.

So what I want to do is figure out, I want to hear what your thoughts are on how we can move this forward in an orderly way. It's a slightly odd posture because at least the lowest numbered case on my docket it still hasn't been

answered, which I understand. So I'm not sure that any of the ones on my docket have actually been answered, so there's that. But does anyone have any thoughts about how you want to proceed on this?

MS. SCOTT: We would --

THE COURT: Ms. Liss-Riordan, I'll hear from you first.

MS. LISS-RIORDAN: Yes, if I may speak, Your Honor. So I won't go through the long history, unless you want to hear a long history.

11:50

THE COURT: I don't.

MS. LISS-RIORDAN: Essentially there was a collective action. It was decertified. We re-filed it as a mass action or series of mass actions. FedEx said no, you can't even file it as a mass action. Each one needs to be individual. Judge Casper agreed. So we re-filed the cases individually, and the first thing FedEx did is said can we get a conference with one judge to oversee this. We said okay. We've been saying all along they should be heard together.

11:51

So we are glad that they are, for procedural pretrial purposes, now with one judge, Your Honor. We've actually been saying for years that they should operate like an MDL, and the proper course would be to start putting cases forward to trial as bellwethers perhaps until we try them all or we resolve them along the way.

So I think out of 190 of these cases I will tell you that 17 of them plaintiffs have already been deposed. And I believe 42 of them the plaintiffs have already participated in written discovery. We have already taken the general discovery that we need for the cases. So, frankly, many of these cases are ready to go to trial, and, in fact, in a number of cases we've already begun filing motions for expedited trials before the various judges that they were previously assigned to or still assigned to because they were just with you for pretrial purposes, and so we've asked to start putting some forward to trial.

11:52

Now, I know that what FedEx is going to tell you is wait a minute, we haven't even stated a claim, because Judge Casper did just grant in another one of these cases, which I believe has not been transferred -- at least from what we see on the docket has not yet -- Judge Casper granted FedEx's motion to dismiss in another case, saying that we haven't even pled a claim under Rule 12(b)(6), which we're still kind of scratching our heads over because these cases have been litigated over eight years. They've been through a lot of discovery. They were conditionally certified.

11:53

But in any event, based on Judge Casper's ruling, we amended the case that she was presiding over to be even more detailed in the factual allegations. And when we filed these close to 200 cases, we included those additional factual

allegations that Judge Casper said we needed, even though we think, we know this pleading is more than well established here. FedEx knows what these cases are about. We've been litigating them for eight years.

So I'm sure FedEx is going to urge that you not let anything go forward to trial until they get to have their motions to dismiss heard, which we think is really a little absurd at this stage. We have, just for the context, this is the Massachusetts piece of this, we have a similar story 11:53 playing out in the national litigation in Pennsylvania where we had 30,000 drivers who had opted in to the conditionally certified collective there.

After Judge Robertson decertified the Massachusetts case, we voluntarily decertified the national case. So we're in the midst of figuring out what's going to be happening there, but similar to here, we are asking or expecting that one way or another that the tens of thousands of individually filed or mass filed complaints which may become individual complaints, we're going to ask to have them overseen by a 11:54 single judge to treat it either as a formal MDL or like an MDL anyway. So that remains to be seen.

But just so you know, in that case the judge in Pennsylvania already transferred 12 cases -- 14 cases to other courts around the country to proceed, and we now have trial dates scheduled in two, almost three of them. We're on track

to have five trials scheduled for this year hopefully.

So basically our thoughts on all of these cases is that if we can't try them as a collective, which is what Judge Robertson decided in her order in Roy, they need to be treated like an MDL and we start trying individual bellwethers until we're either done or we spend the next ten years trying them, which we may have to do, but we need to move these two decisions, plaintiffs strongly feel like it's time to move on.

We've spent years doing discovery in these cases. We need to start getting trials set. And individually each case can get worked up for trial, and we believe that what we'd like to see is a system set for choosing cases that go forward toward trial and either Your Honor or the judges who these cases were assigned to can handle things like the pretrial motions in limine. FedEx has been filing motions for summary judgment. Ms. Scott and I have been traveling around the country arguing these summary judgment motions now in the transferred cases from the national case.

We can argue summary judgment individually for each case if we need to, but frankly it's the same issues that we're arguing over and over and over again. So, you know, I think it makes more sense to have them -- well, it's going to be up to your discretion of course how to handle these, but that's the overview. I'm happy to answer any other questions that you have.

THE COURT: The case where Judge Casper granted the motion to dismiss, was that Doyle or was that a different case?

MS. LISS-RIORDAN: Doyle, correct.

THE COURT: Is that the January 21 decision, or is it a subsequent decision?

MS. LISS-RIORDAN: I think that's the decision you're referring to, and we amended. She granted the motion to dismiss without prejudice with leave to amend. We then amended it. Then FedEx opposed our motion to amend saying we still 11:57 hadn't pled it sufficiently, and then we saw -- I think I saw something on the docket come through that she denied that without prejudice, and I wasn't sure whether that was because that case may also be transferred to you, so we don't really know exactly what the status is of that. But again, the amendment that we made to the Doyle case after her ruling we put in those types of factual allegations to these close to 200 cases that we filed individually.

THE COURT: Okay. So just so you know, these cases are not going to be transferred to me. They're going to stay 11:57 with the judge where they are, but they've all been linked, so to speak, and I'm going to be the only one handling them, but they're going to sit with the judges where they are.

All right. Let's hear from someone from FedEx. Mr. Siedband, is that you or someone else?

MR. SIEDBAND: Attorney Scott, Your Honor.

THE COURT: Okay.

MS. SCOTT: Your Honor, it will be me. Thank you.

Okay. Just to sort of back up and reset here, Judge Casper still has three of these cases. Identical complaints were filed in all of them. FedEx moved --

THE COURT: Hold on. I don't know what you mean by "she has them" because I have them as far as I know.

MS. SCOTT: The consolidation or that ruling that brought them to Your Honor said only the cases filed from 11:58 February something, as there were these three cases that were filed well over a year ago.

THE COURT: Okay. My guess is those are coming too, but go ahead.

MS. SCOTT: I mean, that's certainly a possibility, but in any event, we've been through now two rounds of briefing on the sufficiency of the plaintiffs' complaints. They were, when they were filed, just essentially identical complaints. We filed the motions to dismiss. You know, the statement that the same complaint has been litigated for eight years, those 11:59 were in the context of putative collective and class actions. We're now facing a totally different situation. And the First Circuit standards are clear, which Judge Casper agreed with.

She issued a very lengthy decision, the one that Your Honor just referenced, detailing thoroughly what was lacking across the complaint in terms of employment and all the

elements of the overtime. The judge set a deadline for when plaintiffs could file a motion or move to amend. Plaintiffs then filed said motions for leave to amend in the three cases. FedEx opposed because still critically absent was the plausible claim for overtime. Judge Casper had laid out what they needed, and they still did not provide it.

Just as one example, they still do not allege how any of these people were paid and when or even to say something like, "I was never paid overtime." It's undisputed FedEx did 12:00 not pay these, and still to this day, in these complaints it doesn't say that. So we opposed the motion for leave to amend based on futility.

On -- what date was this -- the third, Judge Casper issued a text-only order saying that she had reviewed the motion for leave to file a second amended complaint as well as plaintiffs' reply and denied the motion for leave to amend without prejudice. The judge did not say I'm denying without prejudice so that this case can be re-filed or transferred or so on and so forth. It does not say that. The court made 12:01 clear she reviewed the papers and denied their motion to amend without prejudice.

THE COURT: Hold on. Let me interrupt you. I think that her intention and all of the judges, I think that all the pending motions are going to be denied with leave to renew without prejudice. I don't think she intended a ruling on the

merits.

MS. SCOTT: Okay. So also based on what we have, right, which was still in dispute as to whether plaintiffs' new complaint satisfied the standards, which we argue it didn't, and the new complaint is identical to the 190 other cases, and so we did not ask for these cases to all be consolidated and put together for all purposes. That's not a correct representation.

What we asked was we asked for guidance as to whether, 12:02 given this was pending before Judge Casper, for her to decide whether the new complaint met the standard as to whether we should go file 190 motions to dismiss before all the judges based on identical complaints and identical arguments for 190 cases to deal with or whether it made more sense to simply file one for someone to decide. And my understanding is that is what led to where we are right now, is because we made this request. We did not want to burden this district with 190 motions to dismiss addressing the exact same issue.

Now, after we resolved the pleading, these cases are 12:02 all extremely different. They're based on individual facts. Some are partial; some are full. You know, they are individual cases and we've always maintained they be treated as such. But we wanted guidance from the judges of this district as to how it would best make sense to address the sufficiency of the pleading.

And so we had agreed with Ms. Liss-Riordan that we would not start filing our motions to dismiss, and we saw the order come from Your Honor. It says don't file anything, you know, until there's something from the court, and so we have not filed anything because we wanted to discuss with Your Honor what we should be -- if it makes sense to file one motion to dismiss based on the same arguments made in opposition to plaintiffs' motion for leave to amend before Judge Casper and how we proceed from there.

12:03 And then in terms of these motions to expedite trial dates, you know, we would ask for those to be dismissed without prejudice at this point in time because we have to get past the pleading and to suggest that --

THE COURT: All right. Hold on. All the pending motions are going to be dismissed.

MS. SCOTT: Okay.

THE COURT: You can save your words on that one.

MS. SCOTT: Thank you, thank you, Your Honor. So really the first question will be, you know, how Your Honor 12:04 wants us to proceed with a motion to dismiss, right? And so the timing for that, obviously we think it makes sense to file one because again these are identical complaints.

And then just to address briefly these other issues in terms of bellwethers and MDLs and things moving forward, plaintiffs' counsel have been raising MDL and bellwether for

about two years now since the conditional collectives were decertified.

As we explained every time this was raised and every time we briefed it and argued it before the various judges, bellwethers are put into place typically when the parties agree that doing so and having a few will help to advise them as to how other cases come out. Because in these cases FedEx has always maintained that these are individual cases based on individual facts, simply taking a few cases and getting 12:05 verdicts in them is not going to tell us, in our view, as to how the outcome is going to be in every other case. So we do not believe that a bellwether process makes sense.

And we explained this to Judge Casper. We explained it in the Western District of Pennsylvania because plaintiffs were asking there to essentially be excused from doing individualized discovery as to all these individuals saying, well, we can just focus on some bellwethers. And that was our response, and the courts all expressed -- first of all, none of them adopted that they can just skip over discovery or stay 12:06 discovery with respect to individuals, but they also expressed concern that given that it took years and years and years for plaintiffs to get us very limited opt-in discovery in the conditional collectives that plaintiff would be able to meet real plaintiffs discovery in these number of cases.

So those courts never latched on to this bellwether

suggestion. The cases that plaintiffs cite show that you actually have to do discovery too before bellwethers even -- how do you even select bellwethers? Even if that was something that we would agree would help ultimately resolve the broader cases, you have to do discovery to figure out, you know, who the parties are going to agree are the bellwethers.

And so that's sort of been the process is, you know, that the statement about some of these plaintiffs having already been deposed and having already engaged in written discovery, that was opt-ins only. The written discovery that was allowed was limited. It was limited to a questionnaire. We did not receive interrogatories, RFPs, and the depositions and the written discovery is three years or more out of date for all of those and so it's not useful. Plaintiff discovery has not been done with resect to any of these individuals.

And so the suggestion that these cases are just ready to proceed to trial, again, this is under this assumption that plaintiffs can just skip over how a normal single plaintiff case acts based on extremely limited discovery, based on jumping over FedEx's right to file a motion to dismiss, based on this premise that, you know, we shouldn't be able to file a summary judgment motion or that it should be somehow decided as to one, so on and so forth.

In the 12 cases that spun off from the Western District of Pennsylvania, every time we had a status conference

in those 12 cases, plaintiffs were demanding trial dates for January, February of this year, and the cases had just been transferred by late summer. And we said, look, we're not opposed to a prompt trial date, and those individuals had been named plaintiffs, named plaintiffs since at least 2021, but the problem is we have multiple motions that are pending. We didn't have adequate damages disclosures from the plaintiffs. Plaintiff has the 702 motion pending in each of those cases to strike both of our experts, and FedEx has summary judgment motions pending in each of those cases, some of which, like I said, are full, some of which are partial, all of which are based on the facts in only those cases. There are five of those cases left. Trial has only been set in one of the five.

12:09

The other one in the District of Maine, the court scheduling order requires the parties to put in a trial-ready date but made clear at the hearing that doesn't mean that's your trial date, and that trial-ready date is September 1, and we have no other trials scheduled. We did just get instructed in another one to provide the court dates beginning in September through the end of the year to try and set that one, and these are for folks that have been named plaintiffs since 2020.

12:09

And so this proposition that let's just jump forward, it is removing -- the proposal removes our ability to conduct the discovery that we're entitled to, which will then help us

decide, you know, how are we moving for summary judgment, in which cases, and so on and so forth.

And the MDL position here, like I said, it's been mentioned for two years. Plaintiffs' counsel have never actually done it. And I think the reason for an MDL is to handle things that have already been handled in the conditional collectives. So, again, the case that was in the District of Massachusetts which had 500 opt-ins and then the Western District of Pennsylvania case which was nationwide had 30,000 opt-ins, those cases were pending for five, six years. We did generalized broad discovery as to FedEx during that time period. The entire point of it was to determine if these cases can proceed collectively to get this general type discovery done and to resolve the issue of certification and see if things could or could not proceed collectively. And that's the point of an MDL, is to make sure that the general stuff is taken care of together. Well, that's already been done.

I mean, we're here, and like I said, we have this one issue because they have now filed identical complaints. But beyond that, discovery is going to be individualized, plaintiff-specific. It would make absolutely no sense for any cases like this to go to an MDL.

In any event, Your Honor made a good point. This is sort of being treated like a mini MDL. I mean, for coordinating and things like that, you know, that's fine. We

just want to make sure that these cases are actually treated as individual cases and can proceed on normal schedules.

We are very concerned, based on how long it took in the other cases to get any sort of limited discovery, that what will happen here is that plaintiffs will ask for and continue to push on time to get discovery and depositions set up for these people, and we would like these cases to be held to schedules that are expected in individual cases so that we can get the discovery we need in a timely fashion so, as opposed to the conditional collectives, we're not waiting a year to get discovery issues resolved for nonresponsive opt-ins and things of that nature.

And so, you know, that's sort of the lay of the land from our perspective. The remark about Rule 68 offers, I mean, there will be no Rule 68 offers coming forward. Let's just be clear. There will be no global resolution coming forward. We have been making the global resolution point for, I mean, since the start of these cases, and that's why we've been litigating them so long. We made, to at least a few named plaintiffs who have gone through full discovery, we made a few Rule 68 offers because in those instances they were small amounts and we didn't see the point in going through trial in those cases. We did not make Rule 68 offers in all of the 12 to 14 that spun off.

So a suggestion that, well, if we push FedEx toward

the trial date, they'll make a Rule 68 offer, which I continue to hear from plaintiffs' counsel, that's false. The cases we made them in didn't even have trial dates set yet. And that is not happening. You know, we thought maybe we could get some of these one-offs resolved and just move on from these cases, which in the ten other class actions that we've faced on these same issues is what happened, and that was the goal.

Clearly, Ms. Liss-Riordan's firm doesn't want to do that, which is fine, but, you know, as a result we're not going 12:14 to be -- to suggest that a bellwether or some other procedure will help in a global resolution or setting early trial dates will lead to Rule 68 offers, I am here as an officer of the court to say that is not happening. And so just for planning purposes, I'd like to correct that assumption.

So I think that that covers the lay of the land from our perspective, Your Honor.

THE COURT: All right.

MS. LISS-RIORDAN: May I say a couple of words? I'm sure you have things to do.

12:15 THE COURT: You're going to say a couple of words?

MS. LISS-RIORDAN: Couple sentences.

THE COURT: I'm not really buying that, but go ahead.

MS. LISS-RIORDAN: Okay. I'll try to be brief. First of all, I didn't go into as much detail as Ms. Scott did into the history. I'm not going to bore you with everything, but

basically globally FedEx's goal through these eight plus years of litigation have been to just avoid every single courtroom in any of these cases, so its method has been to insist that discovery just go on and on and on forever. And I think we spent two, maybe three years doing discovery in both the Massachusetts cases and the national cases. We had orders from the court regarding how many of the opt-ins would do discovery. We were producing discovery for hundreds of plaintiffs. We had dozens of depositions around the country. So we got pretty far down the road for pursuing discovery for all of these individuals, but then FedEx's mantra was always it always needed more discovery before we could ever think about starting trials, and it has tried to knock out as many of the plaintiffs as possible by forcing individuals who really were opt-ins to a collective action to do discovery. And obviously not all of them are going to do it, so people dropped out along the way as FedEx pushed for discovery.

What we've been telling the judges here is that it's not necessary to do discovery on every last plaintiff before the single trial happens. And we can do things simultaneously. We can keep doing discovery while we push forward to trial the cases that are ready to go to trial.

Now, the 14 cases from the national cases that got sent around the country, what happened was, of those 14, once they got sent to courts to move forward to trial, FedEx did

make Rule 68 offers that were accepted by nine of those 14 plaintiffs, so those cases got resolved. So the remaining five cases as I think we both agreed either have trials set or are in the process of getting trials set for hopefully this year.

The discovery that was done for the plaintiffs in those cases is really not -- even though those were so-called lead plaintiffs as opposed to plaintiffs who had been opt-in plaintiffs, materially there's not really much difference in the discovery that was done. They took their depositions. We produced what documents the plaintiffs had. The cases, many of these cases are ready to go to trial. FedEx can file its summary judgment motions, which are a little targeted as to the specifics of the different cases, but it's essentially the same issues that we briefed over and over and over again, I think closer to 14 times in the summary judgment motions they filed for the 14 cases that got transferred out for trial, so, you know, we all have our briefing kind of in a box at this point, so those can either be decided by one court here in Massachusetts with Your Honor or they could go to back to the judges who will be hearing the cases for trial. That will be up to you to decide how to handle that.

But basically FedEx's attempt here has been to delay the cases, delay, delay, delay. We have clients who die. We've been doing cases for so many years, we have clients who are dying waiting to have their case heard. We would like to

see cases start going to trial. Ms. Scott claims these cases will never resolve, so that's fine. We're in it for the long haul. We'll do this for 20 years if we need to. We have our clients who have all asserted that they were not paid overtime they were owed, and we're going to pursue their cases through whatever it takes to get them resolved one way or another.

We'd like to see trials. We'd like to see a lot of trials get started. Maybe that will lead to a global resolution; maybe it won't. But we don't need to wait for 12:19 FedEx to do discovery, full-blown discovery on every last person before a single one of them can get to trial. And that's what we ask Your Honor to help us manage so that we can get to a logical place to move these cases forward.

THE COURT: I promise we're not going to be doing this for 20 years because we're not. The cases in Massachusetts, are those any of the cases where the discovery is --

MS. LISS-RIORDAN: Yes --

THE COURT: Please. Are there any cases in Massachusetts that had summary judgment motions filed?

12:20 MS. LISS-RIORDAN: None.

THE COURT: Okay. And how many of the complaints in Massachusetts have been answered or had motions to dismiss filed?

MS. LISS-RIORDAN: None, except for the three that are still technically on Judge Casper's docket.

THE COURT: Okay. So do you agree, Ms. Liss-Riordan, that we should first deal with the motion to dismiss issue?

MS. LISS-RIORDAN: I mean, frankly --

THE COURT: Is that going to be the same issue in all 190 cases?

MS. LISS-RIORDAN: I believe it's going to be the same issue. I understand their, I guess, right to file those motions, although I think it's within the discretion of the judges to manage their docket. These were things that were
12:20 collectively conditionally certified by Judge Robertson about six or seven years ago and have undergone serious discovery. So I understand they want to move for summary judgment, but for them to slow this all down by moving to dismiss and we haven't even stated a claim just boggles my mind, but I do recognize Judge Casper bought their argument, so I leave it to you to decide.

THE COURT: Well, just for starters, under the rules, they have a right to file a motion to dismiss. I can't order them to answer without filing a motion to dismiss. So does
12:21 anybody care what case the motion to dismiss is entered in? Does it matter?

MS. LISS-RIORDAN: No.

MS. SCOTT: No, Your Honor.

THE COURT: My screen just blacked out for a second. Sorry about that.

Could we agree to pick one of the cases that has been drawn to me and file a motion to dismiss in that case?

MS. SCOTT: Yes. I was just thinking we would file it in the Baez case.

THE COURT: That's fine.

MS. LISS-RIORDAN: That's fine.

THE COURT: Okay. So let's do that. And I mean, the rule sets certain time limits, but you guys say you have these in the can, so feel free to accelerate yourselves and we'll get that ruled on and see where we are.

12:21

And I'm not sure how much further I want to go beyond that at this point, but what I will say, Ms. Scott, is that I hear you, but I'm going to disagree with you that we can't figure out a way to take similar cases and try and put them in buckets and have something like a bellwether. If we're going to try some of these cases, we're going to be selective about which ones we try and try and find ones that inform as to other cases. And not that it guarantees an outcome, but it does give you a settlement rubric for these things, that like cases can resolve likely. So you can keep that in the back of your mind for now.

12:22

MS. SCOTT: Your Honor, we just want to make sure we get discovery because we don't know how to put these like cases together without getting discovery. We never suggested that we have to have discovery for everyone to go to trial on any one,

but, you know, if we are talking about sort of a bellwether type process, then that does have to happen, because in a bellwether process, you get discovery to figure that out. None of these people have gone through plaintiffs discovery. It was just limited opt-in discovery as to --

THE COURT: I get it, but what you said was that there wasn't going to be kind of a bellwether type of thing, and I'm going to push back on you on that.

So as you go forward with this, you all should try and 12:23 keep an eye on if there are different buckets and different cases can go into those buckets as sort of not the same because they're all different cases but similar enough that we could pick one from that bucket to inform how we're going to resolve another ten or however many it is.

So what about mediation? Have you guys all thought about mediating this, any of them?

MS. SCOTT: No, Your Honor. As I said, plaintiffs want a global resolution, and as we've been telling them since 2017, FedEx is not agreeing to a global resolution.

12:24 THE COURT: Okay. I'm not talking about a global resolution. I'm talking about mediating representative cases.

MS. SCOTT: I guess that's what the problem is because as all these courts have found, there is no representative case. There's no representative evidence. I mean, that's why the cases have been --

THE COURT: No, that's not what cases have found. That's not what the courts have found. What they found is all 190 of them are not the same. No one has made a determination that no two are similar enough that they can go into the same bucket. So they are individual cases, but there will be similarities between many of them, and some of them will be quite similar and some of them will be quite dissimilar. That's my expectation.

So you should start thinking about this as, I mean, 12:24 individual cases but in the context of the idea that there will be some cases that are similar enough that they can be representative in various ways. So let's start with the motion to dismiss, and we will regroup after that.

MS. LISS-RIORDAN: Can I just say something just to further your thoughts on the similarity issue? The reason that Judge Robertson agreed to decertify the Roy case was, I think there's just broad understanding and agreement that the joint employment question as to whether FedEx is a joint employer of all these drivers who were paid through these intermediary 12:25 entities called ISPs is similar across the board. What Judge Robertson found was not similar enough to maintain the collective was how they were each paid by their individual ISP would differ, and thus, the cases would have to be different. So what's similar in all of cases really is this question is FedEx the employer.

If that is something we win on and we're correct that FedEx is the employer of these drivers, then FedEx has about four or five arguments about why it's not liable for overtime. And that's why our summary judgment motions have been repetitive is because variations of these different arguments are applicable to the different cases. So in some ways they're really all similar just on the joint employment issue, but how and why individuals are entitled to overtime that they didn't receive, there may be nuances between them. We still believe it's all pretty similar, but we understand Judge Robertson decided it was different enough that the collective needed to be --

12:26

MS. SCOTT: Your Honor, I apologize I have to address this joint employer being similar issue. This has been raised, briefed and decided about ten times now, not all with Ms. Riordan but with cases across the country, where in every one, plaintiff's counsel attempted to argue, at least give us certification on the issue of joint employment. And no court, including Judge Robertson, would give them that because the test is factual and it differs amongst people. It's not like an independent contractor misclassification, which is, states -- like a right to control, as you look at a contract, the contract between the two parties. The test is clearly individualized. Judge Robertson did not agree that it was common enough, and no court has agreed to certify that issue

12:27

despite plaintiff counsel's repeated request to do so.

So I do want to make clear there is no agreement that that is a similar issue. Those will be individualized facts in every single case on the joint employment question, and that has been a key theme in terms of the divergences between the parties on these issues through the past almost ten years now.

MS. LISS-RIORDAN: I just beg to differ, I completely disagree with what Ms. Scott has said.

THE COURT: Okay. I get it. But what I will say, 12:28 Ms. Scott, is all 180 or 190 cases are not the same. I am not ready to buy the idea that none of them are the same. I am not intending on putting together something where 190 cases get tried, all right? I'm just not. I'm trying to find a way to streamline this to give all of you enough information about what these cases are and what they aren't and if there are ones to go forward what their potential valuation is and then take it from there.

So let's start with the motion to dismiss and then see where we are after that. How fast do you want to file it, 12:28 Ms. Scott?

MS. SCOTT: So the current deadline for Baez is May 4, and we can -- I mean, we can bump that up to 21 days, so we're willing to bump that up to just the 21 days.

THE COURT: All right. File that.

MS. LISS-RIORDAN: What does that mean, 21 days? I'm

not sure, what date are we talking about?

MS. SCOTT: Honestly we had been waiting for what Judge Casper was going to rule. You know, we didn't know what this motion was going to be --

THE COURT: 21 days from today is fine. Then Ms. Liss-Riordan, you'll file a response. You know what the rule says. You're in a hurry, so you can comply with the rule or you can get it done quicker if you want. I'm not interested in a reply brief at this point. So you guys know the issues. 12:29 There shouldn't be any surprises in her reply that should require a response, so put it all into one brief. All right?

MS. LISS-RIORDAN: Okay.

THE COURT: Anything else for today? Let me ask you, Ms. Liss-Riordan, do you think that some of these cases are ready for trial? Do you want to mediate the trial-ready ones?

MS. LISS-RIORDAN: I'm sorry, I didn't hear that.

THE COURT: Do you want to mediate the ones that you think are trial ready?

MS. LISS-RIORDAN: We're happy to mediate any of them. 12:30 Ms. Scott has made clear FedEx doesn't want to do that.

THE COURT: All right. Ms. Scott, are you prepared to mediate any of the individual cases that we can get ready for trial?

MS. SCOTT: No, none of them -- we haven't gone through discovery. We don't even know what these people were

paid --

MS. LISS-RIORDAN: 42 have --

THE COURT: Knock it off. Knock it off. If you want to debate back and forth with each other, find another room and do it. File a motion to dismiss and we'll take it from there. We'll recess for today. Thank you.

(Adjourned, 12:30 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Kelly Mortellite, Registered Professional Reporter, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing transcript is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter to the best of my skill and ability.

Dated this 11th day of April, 2026.

/s/ Kelly Mortellite

________________________________

Kelly Mortellite, RPR, RMR, CRR
Official Court Reporter